UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

SAFRON CAPITAL CORP., Individually and  :   Civil Action No.
on Behalf of All Others Similarly Situated,  :
                                :   CLASS ACTION COMPLAINT
              Plaintiff,  :
                                  :
     vs.                       :   JURY TRIAL DEMANDED
                                  :

BANK OF AMERICA CORPORATION and  :
MERRILL LYNCH, PIERCE, FENNER &amp;  :
SMITH INCORPORATED,            :
                                :
           Defendants.  x

———————————————————

By and through its undersigned counsel, Safron Capital Corp. ("Plaintiff") brings this class action against defendant Bank of America Corporation ("BofA") and its wholly owned subsidiary, defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, without limitation, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by BofA with the U.S. Securities and Exchange Commission; (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to the Merrill Lynch Cash Sweep Program ("Sweep Program"), which transferred idle customer cash into interest-bearing "cash sweep" accounts. Plaintiff and the Class members (defined below) were customers of Merrill whose funds were transferred to cash sweep accounts under the Sweep Program.

2.     Under the Sweep Program, Merrill swept customers' idle cash deposits into separate accounts that were highly lucrative for Defendants and their affiliate banks but paid unreasonably low, below-market interest rates to customers. As such, Defendants used the Sweep Program to generate massive revenue for themselves at the expense of their customers.

3.     Defendants made materially misleading statements to customers about the Sweep Program and failed to disclose that Defendants established and used the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Sweep Program.

4. Defendants' material statements and omissions regarding the Sweep Program, and use of the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers, violated federal law including the Investment Advisers Act of 1940 ("Advisers Act"), the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute"), and breaches of their fiduciary duties and contractual obligations to customers.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 50 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 50 U.S.C. §§80b-1-21.

6. This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transacted business and had offices in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

8. In connection with the challenged conduct, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, without limitation, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

9.      Plaintiff Safron Capital Corp. is a Delaware corporation headquartered at 2836 Lyndale Avenue South, Suite 260, Minneapolis, Minnesota 55408.  During the relevant time period, Plaintiff was a Merrill account holder.  As a Merrill account holder, Plaintiff's uninvested cash was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Sweep Program.

**Defendants**

10.      Defendant Bank of America Corporation is a Delaware corporation headquartered at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255.  BofA is a financial services company that conducts business throughout the United States, with assets totaling $3.3 trillion, loans and leases totaling $1 trillion, and approximately 212,000 employees.  BofA is the parent company and control person of Defendant Merrill.

11.      Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated is a Delaware corporation headquartered at One Bryant Park, New York, New York 10036.  Merrill is a broker-dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base.  Merrill acts as its customers' agent for the establishment, maintenance, and operation of the Sweep Program.  Merrill is a wholly owned subsidiary of, and controlled by, Defendant BofA.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Sweep Program**

12.      BofA is one of the largest financial services firms in the country.  BofA's wholly owned subsidiary, Merrill, operates as a wealth management division of BofA, offering brokerage and investment advisory services to customers nationwide.

13.     Defendants provide the Sweep Program to customers of Merrill.  The terms and conditions of the Sweep Program are set forth in Merrill's Client Relationship Summary and Client Relationship Agreement ("Account Agreement"),[1] Best Interest Disclosure Statement ("Disclosure Statement"),[2] CMA Financial Service Cash Management Account Disclosures ("CMA Disclosures"),[3] and Sweep Program Guide[4] (collectively, "Sweep Program Documents").

14.     Under the Sweep Program, Merrill automatically sweeps eligible clients' uninvested cash balances into interest bearing deposit accounts ("Deposit Accounts") at one or more of the following banks affiliated with BofA and Merrill: Bank of America, N.A. ("BANA"), Bank of America California, N.A. ("BA-CA"), and Merrill Lynch Bank and Trust Company (Cayman) Limited (collectively, "Merrill Affiliated Banks" or "Bank Affiliates").

15.     The Sweep Program Documents provide that Merrill acts as agent for customers in the Sweep Program, stating: "In the United States, Merrill acts as a broker (i.e., agent) for its private clients as well as its corporate and institutional clients. . . . .  Through BANA, and other bank Affiliates (Bank Affiliates), Merrill provides access to banking services, including lending

---

[1]     Merrill, *Client Relationship Summary*, https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf (Mar. 22, 2024).

[2]     Merrill, *Best Interest Disclosure Statement*, https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Regulation-Best-Interest-Disclosure-Statement_RBIDISC.pdf (Apr. 2024).

[3]     Merrill, *CMA Financial Service Cash Management Account*, https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/CashManagementAccountCMADisclosuresandAccountAgreement.pdf (July 2024).

[4]     Merrill, *Sweep Program Guide*, https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf (Aug. 2024).

and cash sweep services."[5]  Similarly, the Sweep Program Documents state that "Merrill Lynch is acting as agent and messenger for its customers for the deposits at BANA and/or BA-CA."[6]

16.    The Sweep Program Documents further state that the Deposit Accounts in the Sweep Program "will bear a rate of interest that has been established for, and in light of the features of, the Sweep Program.  The rate of interest for such deposit accounts is periodically set and reset by the Merrill Affiliated Banks in their discretion."[7]

**Defendants Reaped Significant Benefits from the Sweep Program to the Detriment of Their Customers, Who Were Paid Unreasonably Low Interest Rates**

17.    The Sweep Program provides several highly lucrative financial benefits to Defendants and their Bank Affiliates.  First, "Merrill and [their] Bank Affiliates benefit financially when [customers] hold any cash balances in the bank deposit accounts affiliated with the Cash Sweep Program.  Merrill receives payments from our Bank Affiliates on a per account basis for each account that sweeps to one of [its] Bank Affiliates relating to offering and supporting the Cash Sweep Program."[8]

18.    Second, "Merrill Advisors and [Merrill Financial Solutions Advisors] receive increased compensation based on achieving a number of strategic objectives, including, among other activities, the growth in their clients' participation in bank sweep deposits and sweep money

---

[5]    *Account Agreement*, *supra* n.1; *Disclosure Statement*, *supra* n.2.

[6]    *CMA Disclosures*, *supra* n.3.

[7]    *Sweep Program Guide*, *supra* n.4.

[8]    *Disclosure Statement*, *supra* n.2.

market funds, checking and savings accounts, the Preferred deposit product, loans, mortgages and margin lending."[9]

19.    Third, through Sweep Program deposits, Merrill's Bank Affiliates "receive a stable, cost-effective source of funding.  They use these bank deposits to fund current and new lending, investment and other business activities.  The participation of the Bank Affiliates in the Cash Sweep Program increases their respective deposits and accordingly overall profits."[10]

20.    Moreover, Defendants are able to maximize their financial gain from the Sweep Program by paying customers unreasonably low rates, creating an admitted "conflict of interest" with customers:

> Bank profitability is determined, in large part, by the "spread" they earn on the deposits – the difference between the interest paid on the bank deposits and other amounts paid to Merrill related to these deposits, on the one hand, and the interest or other income earned on loans, investments and other assets which may be funded in part by bank deposits, on the other hand.  The greater the amount of cash balances maintained in your accounts (which could be as a result of a recommendation from your financial advisor) that is swept into a bank deposit account affiliated with the Cash Sweep Program and **the lower the interest rate paid on the related bank deposit, the more our Bank Affiliates benefit**.[11]

21.    Due to this adverse financial incentive, Defendants fail to pay reasonable interest rates to most Sweep Program customers and instead pay miniscule, below-market rates ranging from 0.01% to 0.15% depending on the amount deposited.[12]  By comparison, Defendants'

---

[9]    *Id.*

[10]    *Id.*

[11]    *Id.*

[12]    Merrill,    *Cash    Management    Solutions*, https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/ICCRateSheet.pdf    (2024). Account Tiers 1-4 of Sweep Program receive interest rates ranging from 0.01% to 0.15% depending on the amount deposited, while account Tier 5 of the Sweep Program, which is limited

competitors pay far higher rates to customers in their own cash sweep programs. For example, competitor Moomoo's rate is 4.6%,[13] Webull's rate is 4.25%,[14] and Vanguard's rate is 4.15%.[15]

22.    The Sweep Program interest rates are also well below the Federal Reserve's benchmark federal funds rates, currently at 4.75% to 5.00%.[16]

23.    Acknowledging this issue, in July 2024, BofA added new language to its Form 10-Q stating that "the rates paid on uninvested cash in investment advisory accounts that is swept into interest paying bank deposits" are among the "risks and uncertainties" that BofA investors should consider.[17]

**Defendants Breached Their Contractual Obligations and Fiduciary Duties Related to the Sweep Program**

24.    Under the Sweep Program Documents, Merrill agreed to act as its customers' agent, and, thus, was contractually obligated to act in its customers' best interests in seeking and negotiating reasonable interest rates under the Sweep Program. However, as discussed above,

---

to certain eligible retirement plan and investment advisory accounts, receives an interest rate of 4.78%. *Id.*

[13]    Moomoo, *Boost your uninvested cash with 4.6% APY*, https://www.moomoo.com/us/invest/cashsweep (last accessed Oct. 10, 2024).

[14]    Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last accessed Oct. 10, 2024).

[15]    Vanguard, *Your cash deserves a good home*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed Oct. 10, 2024).

[16]    Federal Reserve, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last accessed Oct. 10, 2024).

[17]    Bank of America Corporation, Form 10-Q, at 2, https://investor.bankofamerica.com/regulatory-and-other-filings/all-sec-filings/content/0000070858-24-000208/bac-20240630.htm (July 30, 2024).

Merrill failed to act in its customers' best interests because the interest rates that Merrill agreed to pay to its customers were unreasonable compared to the far higher market rates paid by competitors.

25.    Further, Merrill violated its fiduciary duties under federal law.  As an investment advisor for an actively managed client account, Merrill owed a fiduciary duty to its clients under the Advisers Act.[18]  In particular, Merrill was obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and was not permitted to "place its own interests ahead of the interests of its client."[19]  Merrill owed a similar duty of care to its retail clients pursuant to Regulation Best Interest, which required it to act in its retail customers' best interests and prohibited it from placing its own interests ahead of its retail customers' interests.[20]  However, as described above, Merrill violated these duties by using the Sweep Program to enrich itself at the expense of customers who were paid unreasonably low interest rates.

**Defendants Made Material Misrepresentations and Omissions Regarding the Sweep Program**

26.    In the Sweep Program Documents, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Sweep Program.

---

[18]    *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[19]    *Id.*

[20]    Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

27.    The Sweep Program Documents also misleadingly stated that "***from time to time***" the Deposit Account interest rates "will ***likely be*** lower than yields on certain money market funds and other cash alternatives"[21] and that the Deposit Account interest rates"[w]ill ***likely be*** lower than the rates available on other deposit type accounts at the Merrill Affiliated Banks and other banking institutions and yields on cash alternatives, such as money market funds."[22]   These statements were misleading and omitted material facts because, in reality, the Deposit Account interest rates were ***always*** significantly below market interest rates available on other deposit-type accounts and cash alternatives.

28.    Defendants also misleadingly claimed that they "adopted various policies and procedures reasonably designed to prevent the cash sweep arrangement and other business arrangements from affecting the nature of the advice we and our financial advisors provide"[23] when, in fact, such arrangements harmed customers by causing Defendants to automatically sweep customer deposits into Deposit Accounts paying miniscule, below-market interest rates.

**Defendants Violated the RICO Statute**

29.    Defendants violated the RICO Statute through their implementation of the Sweep Program.

30.    Merrill is an "enterprise" within the meaning of the RICO Statute.  Through Merrill, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud customers, including Plaintiff and the Class.  Defendants used the Sweep Program to

---

[21]    *Disclosure Statement*, *supra* n.2; *Account Agreement*, *supra* n.1.

[22]    *Sweep Program Guide*, *supra* n.4.

[23]    *Account Agreement*, *supra* n.1.

benefit and enrich themselves through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the Sweep Program.

31.    The Sweep Program involved commercial activities across state lines, including Defendants' distribution of the Sweep Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

32.    Through the Sweep Program, Defendants conducted and participated in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts"). Defendants' Racketeering Acts included indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

33.    The Racketeering Acts were related in that they were taken in furtherance of Defendants' Sweep Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Sweep Program.

34.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including posting the materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

35.    As Sweep Program customers, Plaintiff and the Class were damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Sweep Program.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in account Tiers 1-4 of the Sweep Program ("Class").  Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.    The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because BofA oversees $3.3 trillion in client assets worldwide.

38.    Plaintiff's claims are typical of Class members' claims because Plaintiff was a BofA customer whose cash deposits with BofA were subject to the Sweep Program, and therefore Plaintiff's claims, and those of all other Class members, arise from the same wrongful conduct by Defendants alleged herein.

39.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class actions litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

40.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class

members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

41.    Because Defendants have acted or refused to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

43.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

    (a)    whether Defendants violated the laws as alleged herein;

    (b)    whether Defendants owed fiduciary duties to members of the Class in connection with the Sweep Program;

    (c)    whether Defendants breached their fiduciary duties to members of the Class in connection with the Sweep Program;

    (d)    whether Defendants violated the Advisers Act;

    (e)    whether Defendants violated the RICO Statute;

(f)    whether Defendants made material misrepresentations and/or omissions regarding the Sweep Program;

(g)    whether Defendants were unjustly enriched by their wrongful conduct;

(h)    whether the members of the Class sustained damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(i)    whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

### BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

44.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

45.    Merrill was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  BofA owns and controls Merrill.

46.    Defendants owed fiduciary duties to Plaintiff and the Class, including a duty to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

47.    Defendants violated their duty to act in the best interests of Plaintiff and the Class by using the Sweep Program to enrich themselves at the expense of customers who were paid unreasonably low interest rates, as described above.

48.    Defendants also violated their duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Sweep Program Documents, as described above.

49.    Further, Defendants violated their duty to act with reasonable care to verify the truthfulness of the information set forth in the Sweep Program, which were materially misleading and omitted material facts for the reasons described above.

- 13 -

50.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and the Class have suffered damages and are entitled to recover such damages from Defendants.

## COUNT II

### VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
### AGAINST ALL DEFENDANTS

51.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

52.     Merrill is registered as an investment adviser under the Advisers Act.  BofA owns and controls Merrill.

53.     Merrill violated Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and placing its own interests ahead of the interests of Plaintiff and the Class in connection with the Sweep Program, as further alleged herein.  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR §276 (July 12, 2019).

54.     The Account Agreement should be deemed void pursuant to Section 215 of the Advisers Act, which provides that every

> (b) . . . contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

55.     Accordingly, Plaintiff seeks rescission of the Account Agreement and restitution of the consideration given pursuant to its purported terms.

## COUNT III

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

56.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

57.     Plaintiff entered into the Account Agreement with Merrill concerning the Sweep Program.  BofA owns and controls Merrill.

58.     Implicit in the Account Agreement was a duty of good faith and fair dealing.

59.     Defendants breached their duty of good faith and fair dealing by failing to provide Plaintiff and the Class with fair and reasonable interest rates on their cash sweep balances in the Sweep Program.   Rather, the interest rates provided by Defendants were below market and unreasonably low.   As such, Defendants denied Plaintiff and the Class the full benefit of their bargain under the Account Agreement.

60.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class sustained damages.

## COUNT IV

## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d), AGAINST ALL DEFENDANTS

61.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

62.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provide in relevant part:

(c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

63.    At all relevant times, Defendants were "person[s]" because they were capable of holding a legal or beneficial interest in property.

64.    Merrill was an enterprise engaged in interstate commerce.  Through Merrill, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud investors.  Defendants used the Sweep Program to enrich themselves by paying unreasonably low interest rates to Sweep Program customers.

65.    Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the Sweep Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Sweep Program over a multi-year period, constitute a "pattern of racketeering activity."  The Racketeering Acts were made possible by the regular, repeated, and continuous use of the employees, facilities, and services of Merrill.

66.    Defendants' Racketeering Acts included the following indictable, predicate offenses:

(a)    **Mail Fraud**: Defendants violated 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent Sweep Program scheme, including the Sweep Program Documents.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violated 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of

conducting the fraudulent Sweep Program scheme.  The writings included the Sweep Program Documents, which were posted on Defendants' public website.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

67.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including mailing and transmitting the Sweep Program Documents to customers.

68.    Plaintiff and the Class suffered damages by reason of Defendants' payment of unreasonably low interest rates on their Sweep Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

69.    Plaintiff's and the Class's injuries were directly and proximately caused by Defendants' racketeering activity.

## COUNT V

## GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

70.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

71.    Merrill was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  BofA owns and controls Merrill.

72.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

73.    Defendants' conduct with respect to the Sweep Program, as described above, was grossly negligent.  By failing to provide Plaintiff and the Class with fair and reasonable interest

rates on their cash sweep balances in the Sweep Program, Defendants demonstrated a lack of care and reckless disregard for their customers' interests and an extreme departure from the ordinary standard of care.

74.     Defendants' gross negligence directly and proximately caused harm to Plaintiff and the Class.

**COUNT VI**

**NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
AGAINST ALL DEFENDANTS**

75.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

76.     Merrill was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  BofA owns and controls Merrill.

77.     Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

78.     Defendants negligently made material misrepresentations and omissions in the Sweep Program Documents, as described above.

79.     Plaintiff and the proposed Class justifiably relied on Defendants' Sweep Program Documents and accordingly deposited and maintained cash balances in the Sweep Program to their detriment.

80.     Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VII

## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

81.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

82.    Defendants financially benefited from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below market interest payments on their Sweep Program balances.  These unlawful acts caused Plaintiff and the Class to suffer injury and monetary loss.

83.    As a result of the unlawful acts alleged herein, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiff and the Class.

84.    Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

## COUNT VIII

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349 AGAINST ALL DEFENDANTS

85.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

86.    Defendants selected New York law as the law governing the Account Agreement.

87.    Defendants' acts and practices with respect to the Sweep Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL").

88.     Defendants' misleading and deceptive business acts and practices with respect to the Sweep Program adversely impacted Plaintiff and the Class, and therefore constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

89.     Accordingly, Plaintiff and the Class seek appropriate relief under GBS §349, including injunctive relief and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on its own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.     Declaring that this action is a proper class action and certifying Plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, as Class Counsel for the proposed Class;

B.     Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding treble damages in favor of Plaintiff and the Class;

D.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.     Ordering rescission of the Account Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.     Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 11, 2024              ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                     STEPHEN R. ASTLEY
                                     ANDREW T. REES
                                     RENE A. GONZALEZ


                                     _____*s/ Stephen R. Astley*_____
                                         STEPHEN R. ASTLEY

                                     225 NE Mizner Boulevard, Suite 720
                                     Boca Raton, FL  33432
                                     Telephone:  561/750-3000

                                     ABRAHAM FRUCHTER & TWERSKY LLP
                                     JACK G. FRUCHTER
                                     450 7th Ave 38th Floor
                                     New York, NY  10123
                                     Telephone:  212/279-5050

                                     *Attorneys for Plaintiff*